J-S63045-18

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | |
|---|---|
| IN RE: ADOPTION OF B.X.D., A MINOR | : IN THE SUPERIOR COURT OF<br>: PENNSYLVANIA<br>:<br>:<br>: |
| APPEAL OF: D.T.M., NATURAL FATHER | :<br>:<br>:<br>:<br>: |
| | : No. 1014 WDA 2018 |

Appeal from the Order Dated June 7, 2018
in the Court of Common Pleas of Cambria County Orphans' Court at
No(s): No. 2017-1116 IVT

BEFORE: OTT, J., MURRAY, J., and STEVENS, P.J.E.*

MEMORANDUM BY STEVENS, P.J.E.: FILED NOVEMBER 20, 2018

Appellant, D.T.M. ("Father"), appeals from the Order dated June 7, 2018, and entered June 12, 2018,[1] in the Cambria County Court of Common Pleas Orphans' Court, granting the petition of Cambria County Children and Youth Services ("CYS") and involuntarily terminating his parental rights to his

_____

* Former Justice specially assigned to the Superior Court.

[1] The subject order was dated and filed June 7, 2018. However, the clerk did not provide notice pursuant to Pa.R.C.P. 236(b), as docketed, until June 12, 2018. Our appellate rules designate the date of entry of an order as "the day on which the clerk makes the notation in the docket that notice of entry of the order has been given as required by Pa.R.C.P. 236(b)." Pa.R.A.P. 108(b). Further, our Supreme Court has held that "an order is not appealable until it is entered on the docket with the required notation that appropriate notice has been given." Frazier v. City of Philadelphia, 557 Pa. 618, 621, 735 A.2d 113, 115 (1999).

minor, dependent son, B.X.D. ("Child"), born in February of 2017, pursuant to the Adoption Act, 23 Pa.C.S.A. § 2511(a)(1), and (b).[2, 3, 4]   We affirm.

Our review of the certified record reveals that CYS has been involved with this family since October of 2015 due to ongoing mental health issues, poor housing conditions, poor hygiene, lack of supervision and poor parenting, issues of domestic violence, and concerns of constant diaper rash.  Notes of Testimony ("N.T."), 5/17/18, at 17.  Mother's two older daughters, neither of whom is Father's biological child, were adjudicated dependent on May 26, 2016, and removed from Mother's care on May 28, 2016.  Father was to have no contact with Mother's daughters at that time, and a report  revealing that he had been seen with the girls led to their removal.[5, 6]  Id. at 15-17; see

_____

[2] By the same order, the trial court involuntarily terminated the parental rights of Child's mother, J.M.D., ("Mother").  Mother has not filed an appeal from this order.

[3] The relevant proceedings also involved Mother's two older daughters, B.M.D. and L.R.C., who are not the subject of the instant appeal.

[4] While the orphans' court does not specifically reference Section 2511(b)  the court invokes Section 2511(b) by providing a bond analysis and speaking to the Child's needs and welfare, suggestive of Section 2511(b).  Order, 6/12/18, at 12-13, ¶¶25-26.

[5] Father testified that he received no order to this effect and that it was his understanding, through third parties, that he was not to have contact with or be around only Mother.  N.T. at 160-61.

[6] We observe that, while Mother's daughters were not removed pursuant to the adjudicatory order, they were thereafter removed and placed in care.  See Petitioner's Exhibit 8, Dispositional Order 6/13/16; Petitioner's Exhibit 8, Order of Adjudication and Disposition, 6/7/16; Petitioner's Exhibit 8, Order, 6/1/16; Petitioner's Exhibit 8, Shelter Care Application, 5/31/16.

also Petitioner's Exhibit 8, Dispositional Order 6/13/16; Petitioner's Exhibit 8, Order of Adjudication and Disposition, 6/7/16; Petitioner's Exhibit 8, Order, 6/1/16; Petitioner's Exhibit 8, Shelter Care Application, 5/31/16. Specifically, CYS caseworker Carol Crouse testified there were concerns related to issues of domestic violence within the home between Mother and Father as well as excessive alcohol abuse by Father. N.T. at 19.

Given this background, Child was removed from parental care following his birth in February of 2017. Id. at 26. An order for the removal and placement of Child pending a shelter care hearing was issued on February 17, 2017. Petitioner's Exhibit 8, Order, 2/20/17. Following a shelter care hearing on February 20, 2017, Child was committed by Order dated March 3, 2017. Petitioner's Exhibit 8, Shelter Care Order, 3/8/17. Thereafter, on March 6, 2017, after a hearing on February 27, 2017, the court adjudicated Child dependent.[7] Petitioner's Exhibit 6, Case Record Summary, at 6.

Pursuant to an Order dated May 31, 2017, Father was directed to comply with paternity testing. Petitioner's Exhibit 8, Permanency Review Order, 6/5/17. Father did not comply, and his paternity was not established through genetic testing until April 19, 2018. N.T. at 53-54. Nonetheless, Father's paternity was established by the Domestic Relations Branch for purposes of

_____

[7] We observe that a copy of the adjudication is not included as part of the certified record.

child support by order dated August 1, 2017, as Father was served personally and failed to appear for genetic testing.[8] Petitioner's Exhibit 14; N.T. at 53-54, 78-79. In an Order dated August 23, 2017, the trial court appointed Father counsel. Petitioner's Exhibit 8, Order, 8/24/17.

Permanency review hearings concerning Child were conducted on May 24, 2017, and August 30, 2017. The trial court found Father had not complied with necessary directives to alleviate the causes of placement. Petitioner's Exhibit 8, Permanency Review Order, 9/18/17; Petitioner's Exhibit 8, Permanency Review Order, 6/5/17. Child's goal, which originally was to return to a parent or guardian, was ultimately changed to adoption on September 13, 2017. Petitioner's Exhibit 8, Permanency Review Order, 9/18/17. Subsequently, aggravated circumstances were found as to Father on February 19, 2018, due to Father's knowing Child's location and failing to have any meaningful or ongoing contact with Child for a period of at least six months. N.T. at 20; Petitioner's Exhibit 8, Aggravated Circumstances Order, 2/20/18; Petitioner's Exhibit 8, Permanency Review Order, 2/20/18.

CYS filed a petition to terminate involuntarily Father's and Mother's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), and (b)[9] on

_____

[8] This was reportedly accepted as Father's acknowledgement of paternity. N.T. 54, 79.

[9] Although CYS does not specifically cite Section 2511(b), the agency references Child's developmental, physical and emotional needs and welfare,

December 21, 2017.  The trial court held a hearing on CYS' petition on May 17, 2018.[10]  In support thereof, CYS presented the testimony of Carol Crouse, CYS caseworker.  CYS also presented the testimony of psychologist Dennis Kashurba who had performed evaluations of Mother and the father of her two daughters; Kathy Sciafe, home management instructor, Independent Family Services; Brittani Salat, in-home counseling program, Independent Family Services; and Molly Humphrey, family support specialist, Professional Family Care Services.  Mother presented the testimony of a neighbor, M.V., and Mother and Father,[11] who were present and represented by counsel, each testified on his or her own behalf.  Child was represented by counsel during this proceeding.[12]

_____

suggestive of Section 2511(b).  Petition for Involuntary Termination of Parental Rights, 12/21/17, at 3, ¶8.

[10] The hearing was originally scheduled for June 11, 2018.  In its Order dated February 28, 2018, the trial court granted counsel for Child's request for a continuance and the matter re-scheduled for April 23, 2018.  Order, 3/12/18.  On April 23, 2018, due to scheduling conflicts and the appointment of new counsel for Father, the matter was continued until May 17, 2018.  Order, 4/23/18.

[11] Although Father was present at the termination hearing, Father was incarcerated at Cambria County Prison at the time on charges relating to driving under the influence from 2016.  N.T. at 158.  He reported a guilty plea hearing scheduled for the following week and hoped to be sentenced to the Day Reporting Center.  Id. at 158, 165.  The outcome is not evident from the record.

[12] Pursuant to the Order dated December 27, 2017, Suzann Lehmier, Esquire, was named as court-appointed counsel for Child throughout the termination proceedings.  Order, 2/21/18.  Attorney Lehmier participated in the

In its Order dated June 7, 2018, the trial court involuntarily terminated Father's parental rights to Child pursuant to 23 Pa.C.S.A. § 2511(a)(1) and (b). On June 27, 2018, Father, through appointed counsel, filed a timely notice of appeal, as well as a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). Thereafter, on July 16, 2018, the trial court filed an Order indicating it would be relying on its June 7, 2018, Order which contains its findings and determinations.

On appeal, Father raises the following issue for our review:

I.      Whether the [c]ourt either abused its discretion or committed an error of law when it granted the Petition for Involuntary Termination of Parental Rights, thereby terminating the parental rights of [Father] to [Child]?

Father's Brief at 2.

_____

termination hearing and argued in support of termination. N.T. at 182. She further submitted a brief in support of this position to this Court.

Given that Child was just fifteen months old at the time of the hearing, Attorney Lehmier indicated that she was unable to ascertain Child's preferred outcome. Id. at 181. As such, Child had the benefit of legal counsel as required by 23 Pa.C.S.A. § 2313(a). See In re Adoption of L.B.M., 639 Pa. 428, 432, 441-42, 161 A.3d 172, 174-75, 180 (2017) (stating that, pursuant to 23 Pa.C.S.A. § 2313(a), a child who is the subject of a contested involuntary termination proceeding has a statutory right to counsel who discerns and advocates for the child's legal interests, defined as a child's preferred outcome); see also In re T.S., _ Pa. _, 192 A.3d 1080, 1089-1090, 1092-93 (2018) (finding the preferred outcome of a child who is too young or non-communicative unascertainable in holding a child's statutory right to counsel not waivable and reaffirming the ability of an attorney-guardian ad litem to serve a dual role and represent a child's non-conflicting best interests and legal interests).

In matters involving involuntary termination of parental rights, this Court's standard of review is as follows:

> The standard of review in termination of parental rights cases requires appellate courts "to accept the findings of fact and credibility determinations of the trial court if they are supported by the record." In re Adoption of S.P., [616 Pa. 309, 325, 47 A.3d 817, 826 (2012)]. "If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion." Id. "[A] decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will." Id. The trial court's decision, however, should not be reversed merely because the record would support a different result. Id. at 827. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings. See In re R.J.T., [608 Pa. 9, 26-27, 9 A.3d 1179, 1190 (2010)].

In re T.S.M., 620 Pa. 602, 628, 71 A.3d 251, 267 (2013). "The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence." In re M.G. & J.G., 855 A.2d 68, 73-74 (Pa.Super. 2004) (citation omitted). "[I]f competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result." In re Adoption of T.B.B., 835 A.2d 387, 394 (Pa.Super. 2003) (citation omitted).

The termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S.A. §§ 2101-2938, and requires a bifurcated analysis of the grounds for termination followed by the needs and welfare of the child.

> Our case law has made clear that under Section 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing

evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

In re L.M., 923 A.2d 505, 511 (Pa.Super. 2007) (citations omitted). We have defined clear and convincing evidence as that which is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." In re C.S., 761 A.2d 1197, 1201 (Pa.Super. 2000)(quoting Matter of Adoption of Charles E.D.M., II, 550 Pa. 595, 601, 708 A.2d 88, 91 (1998)).

Herein, the trial court terminated Father's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1) and (b), which provide as follows:

(a) General rule.--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

* * *

(b) Other considerations.--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings,

- 8 -

income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1), (b).

We first examine the court's termination of Father's parental rights under Section 2511(a)(1) and in doing so employ the following well-established standard of review:

> To satisfy the requirements of Section 2511(a)(1), the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties. In addition,
>
>> Section 2511 does not require that the parent demonstrate both a settled purpose of relinquishing parental claim to a child and refusal or failure to perform parental duties. Accordingly, parental rights may be terminated pursuant to Section 2511(a)(1) if the parent either demonstrates a settled purpose of relinquishing parental claim to a child or fails to perform parental duties.
>>
>> Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

In re Z.S.W., 946 A.2d 726, 730 (Pa.Super. 2008) (internal citations omitted).

As it relates to the crucial six-month period prior to the filing of the petition, this Court has instructed:

- 9 -

> [I]t is the six months immediately preceding the filing of the petition that is most critical to our analysis. However, the trial court must consider the whole history of a given case and not mechanically apply the six-month statutory provisions, but instead consider the individual circumstances of each case.

In re D.J.S., 737 A.2d 283, 286 (Pa.Super. 1999) (citations omitted). This requires the Court to "examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of his or her parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination." In re B., N.M., 856 A.2d 847, 855 (Pa.Super. 2004), appeal denied, 872 A.2d 1200 (Pa. 2005) (citation omitted).

> Further, we have stated:
>
> [T]o be legally significant, the [post-abandonment] contact must be steady and consistent over a period of time, contribute to the psychological health of the child, and must demonstrate a serious intent on the part of the parent to recultivate a parent-child relationship and must also demonstrate a willingness and capacity to undertake the parental role. The parent wishing to reestablish his parental responsibilities bears the burden of proof on this question.

In re Z.P., 994 A.2d 1108, 1119 (Pa.Super. 2010) (citation omitted), reargument denied, May 28, 2010; see also In re Adoption of C.L.G., 956 A.2d 999, 1006 (Pa.Super 2008) (en banc).

> In analyzing the definition of "parental duties," this Court has stated:
>
> There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this Court has held

that the parental obligation is a positive duty which requires affirmative performance.

This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child.

Because a child needs more than a benefactor, parental duty requires that a parent exert himself to take and maintain a place of importance in the child's life.

Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with . . . her physical and emotional needs.

*In re B., N.M.*, 856 A.2d at 855 (internal citations omitted). Critically, incarceration does not relieve a parent of the obligation to perform parental duties. An incarcerated parent must "utilize available resources to continue a relationship" with his or her child. *In re Adoption of S.P.*, 616 Pa. 309, 328, 47 A.3d 817, 828 (2012) (discussing *In re Adoption of McCray*, 460 Pa. 210, 331 A.2d 652 (1975)).

In finding grounds for termination of Father's parental rights to Child pursuant to subsection (a)(1), the trial court reasoned as follows:

In its September 13, 2017 order as to [Child], the juvenile court found no compliance by either [Mother] or [Father] and that neither had made any progress towards alleviating the circumstances which necessitated the original placement. The court ordered a new permanent placement goal to be adoption.

[Child] had been in placement for six months since [his] birth. The court further found [Mother] had failed to obtain and maintain mental health treatment and drug and alcohol treatment. [Father] had failed to cooperate with the DNA testing for the child. He never contacted the agency in regards to [Child]. He had never provided an address or telephone number to the agency. And neither parent had been compliant with services.

Order, 6/12/18, at 6-7, ¶13.

Father, however, argues, "the [t]rial [c]ourt erred in its ruling to terminate his rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), as Father's due process rights were violated in the dependency proceedings upon which Petitioner relied to terminate his rights. Since Father's due process rights were violated, the evidence presented was not competent . . . ." Father's Brief at 4. Father further asserts that, as a result of the violation of due process, he was unable to choose to relinquish a parental claim to Child. Father maintains,

Father, having never received proper notice of the dependency actions until August of 2017, could not have made a deliberate and intentional decision as of June 21, 2017, six months prior to the filing of the Petition, to not be in his child's life. The record supports that Father did not receive notice, was unaware of what was going on, and that, even as of July 7, 2017, Petitioner didn't take reasonable and simple steps to determine a good address for Father. . . .

Id. at 6-7. We disagree.

It is well-settled that termination of parental rights implicates a natural parent's Fourteenth Amendment right to due process. See In the Interest of A.P., 692 A.2d 240, 242 (Pa.Super. 1997) (stating that natural parents have a "fundamental liberty interest . . . in the care, custody, and

management of their children") (citing Santosky v. Kramer, 455 U.S. 745, 753, 102 S.Ct. 1388, 1394, 71 L.Ed.2d 599 (1982)).  An individual whose parental rights are to be terminated must be given due process of law, as the termination of parental rights is a constitutionally-protected action.  See In re Interest of K.B., 763 A.2d 436, 439 (Pa.Super. 2000) (citing Santosky, supra).  "Due process requires nothing more than adequate notice, an opportunity to be heard, and the chance to defend oneself in an impartial tribunal having jurisdiction over the matter."  In re J.N.F., 887 A.2d 775, 781 (Pa.Super. 2005).  "Due process is flexible and calls for such procedural protections as the situation demands."  In re Adoption of Dale A., II, 683 A.2d 297, 300 (Pa.Super. 1996) (citing Mathews v. Eldridge, 424 U.S. 319, 334, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976)).

Instantly, Father received personal service of the termination petition and notice of hearing on April 3, 2018.[13]  N.T. at 11, 161; Petitioner's Exhibit 4.  Further, Father was present and was represented by counsel who presented Father's testimony and cross-examined witnesses on Father's behalf.  To the extent that Father's argument pertains to the earlier dependency proceedings, these are separate proceedings.  However, Father acknowledges that he was aware in May of 2017 that Child was in care.  N.T. at 162.  Further, he requested and was appointed counsel in August of 2017

_____

[13] As indicated, the hearing on April 23, 2018, did not proceed and was continued until May 17, 2018.  Notably, Father was present on April 23, 2018, and notified of the new hearing date.  N.T. at 11; Order, 4/23/18.

to represent him in the dependency proceedings. Petitioner's Exhibit 8, Order, 8/24/17; N.T. at 173. We therefore reject Father's due process argument.

Moreover, a review of the record supports the trial court's termination of Father's parental rights pursuant to Subsection (a)(1). The evidence establishes that Father failed to make efforts toward parenting Child and failed to establish a relationship with and maintain contact with Child. Father never saw or visited Child after Child was removed from the hospital after his birth and placed in care, and he has failed to maintain any contact with CYS. N.T. at 22, 28-29, 34. This is despite the fact that Father admits he knew that Child was in care as of May 2017, and CYS and Mother suggested the same. Id. at 28-29, 149, 162-63.

It is noteworthy that the day Father allegedly learned that Child was in foster care, he and Mother were across the street from the facility in which Child's review hearing was taking place.[14] Id. at 162. Father admitted that notwithstanding this knowledge, he did not make an effort to reach out to Child. In response to an inquiry regarding his actions upon learning that Child was in placement, Father stated, "Since he was in placement, I basically tried to call my mom to see if she could help take custody and stuff. We had discussed, I mean like I guess I could have made a lot more effort." Id. at 163-64 (emphasis added).

_____

[14] Father acknowledged that in May of 2017 he had outstanding bench warrants relating to the charges for which he was incarcerated at the time of the termination hearing. Id. at 163.

Significantly, the CYS caseworker, Carol Crouse, noted a "lack of interest" and "lack of motivation to parent." Id. at 42. Ms. Crouse testified CYS saw nothing from Father that led it to believe that Father wanted to perform parental duties. Id. She further stated that Father had not taken any steps in the prior six months demonstrating any desire to parent Child. Id. Additionally, Father failed to make any inquiry of CYS regarding Child since the removal of a subsequent child born to Mother and him in April 2018 who also came into care. Id. at 43.

Father essentially suggests that Child's stability and permanency should be delayed. This is unacceptable. As this Court has stated, "[A] child's life cannot be held in abeyance while a parent attempts to attain the maturity necessary to assume parenting responsibilities. The court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future." In re Adoption of R.J.S., 901 A.2d 502, 513 (Pa.Super. 2006). Child is in a stable and secure environment where he has been placed his entire life. Thus, as the trial court's termination pursuant to Section 2511(a)(1) is supported by competent, clear and convincing evidence in the record, we find no abuse of discretion. See In re T.S.M., 71 A.3d at 267; In re Adoption of T.B.B., 835 A.2d at 394.

We next consider whether termination was proper under Section 2511(b) and in doing so observe Father failed to present any argument and/or discussion related to that provision in his appellate brief. As such, Father waived a challenge under Subsection (b). See In re W.H., 25 A.3d 330, 339

n.3 (Pa.Super. 2011), appeal denied, 611 Pa. 643, 24 A.3d 364 (2011) (quoting In re A.C., 991 A.2d 884, 897 (Pa.Super. 2010)) ("[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived."); see also In re M.Z.T.M.W., 163 A.3d 462, 465-66 (Pa.Super. 2017). Nevertheless, had Father preserved a claim related to Subsection (b), we would find such a claim lacked merit.

When discussing the applicability of Section 2511(b), our Supreme Court has stated as follows:

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S.[A.] § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." In re K.M., 53 A.3d 781, 791 (Pa.Super. 2012). In In re E.M., [a/k/a E.W.C. & L.M. a/k/a L.C., Jr.], [533 Pa. 115, 123, 620 A.2d 481, 485 (1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. In re K.M., 53 A.3d at 791. However, as discussed below, evaluation of a child's bonds is not always an easy task.

In re T.S.M., 620 Pa. at 628-29, 71 A.3d at 267. "In cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists. The extent of any bond analysis, therefore, necessarily depends on the circumstances of the particular case." In re K.Z.S., 946 A.2d 753, 762-63 (Pa.Super. 2008) (citation omitted).

When evaluating a parental bond, "[t]he court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, Section 2511(b) does not require a formal bonding evaluation." In re Z.P., 994 A.2d at 1121 (internal citations omitted).

Moreover,

> While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.
>
> > [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. . . .

In re Adoption of C.D.R., 111 A.3d at 1219 (quoting In re N.A.M., 33 A.3d 95, 103 (Pa.Super. 2011) (quotation marks and citations omitted).

In the matter sub judice, the trial court found termination of Father's parental rights serves Child's developmental, physical and emotional needs and welfare. Order, 6/12/18, at 13, ¶26. In examining the bond between Father and Child and finding that, in fact, none existed, the court stated, "As to [Father], he was not cooperative and never saw [Child] nor made any effort to contact [him], [his] mother, or the CYS agency. The court finds no bond between [Father] and [Child]." Id. at 12-13, ¶25. In further examining Child's needs and welfare, the court continued,

> The court has considered other factors such as comfort, security and stability of the children in their foster care. As testified, the children are doing well in foster care. The court considers the

- 17 -

> importance of continuing their relationship, and as to all respondents, whether the parent/child bond, if any, can be severed without detrimental effects on any of the children. Based on how well each child is now doing in foster care, this court believes it is in each child's interest to have their parents' rights terminated.

Id. at 13, ¶25. Following a review of the record, we again discern no abuse of discretion and find it supports the trial court's determination that Child's developmental, physical and emotional needs and welfare favor termination of Father's parental rights pursuant to Section 2511(b). There was sufficient evidence to allow the trial court to find that a parental bond between Father and Child was lacking and that Child's needs and welfare would best be met in terminating Father's parental rights.

As set forth above, Father has never visited with and never seen or had any contact with Child. N.T. at 22, 28-29, 34. Hence, there is no evidence of any bond whatsoever with Father, and the court was within its discretion in determining as such. Moreover, the evidence reveals that Child is doing well. N.T. at 31-32.

When asked to describe Child, who was fifteen months old at the time of the hearing, Ms. Crouse, stated, in part, "He is walking. He's very pleasant. He's very comical at this age. He's a beautiful little boy. There are no concerns regarding his development. He doesn't seem to have any cognitive limitations. He seems very bright and inquisitive. I can't say anything negative regarding [Child.]" Id. at 31. In addition, Child is flourishing in his foster care placement. Id. at 32. Notably, Child has been placed in the same

foster home, which is a pre-adoptive resource, with his two older half-sisters his entire life. Id. at 32, 73-74. Ms. Crouse explained, "He does extremely well in the foster home. I transported him from the hospital to the foster home following his release from the hospital after birth. That is the only home he has ever known." Id. at 32.

Ms. Crouse stressed that Child, therefore, shares a bond with his foster family. Id. at 32, 74. She expressed, "[Child] is very attached to the foster parents because he has been with them since he has been two days old." Id. at 34. This bond was confirmed by counsel for Child, Attorney Lehmier, who met Child in his foster home and observed that he is "very attached to his foster mother." Id. at 181. Ms. Crouse further indicated that the foster parents are a source of attention and affection for Child and meet Child's needs. Id. at 74. In support of termination supporting Child's needs and welfare, Ms. Crouse stated that Child "deserve[s] to have a stable home where [he] go[es] to sleep knowing [his] needs are going to be met." N.T. at 41. As such, Ms. Crouse opined that termination was in Child's best interests. See Petitioner's Exhibit 13.

Thus, as confirmed by the record, termination of Father's parental rights serves Child's developmental, physical and emotional needs and welfare and was proper pursuant to Section 2511(b). While Father may profess to love Child, a parent's own feelings of love and affection for a child, alone, will not preclude termination of parental rights. In re Z.P., 994 A.2d at 1121. As we

previously stated, a child's life "simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting." Id. at 1125. Rather, "a parent's basic constitutional right to the custody and rearing of his child is converted, upon the failure to fulfill his or her parental duties, to the child's right to have proper parenting and fulfillment of his or her potential in a permanent, healthy, safe environment." In re B., N.M., 856 A.2d at 856 (citation omitted).

Accordingly, based upon our review of the record, we find no abuse of discretion and conclude the trial court appropriately terminated Father's parental rights under 23 Pa.C.S.A. § 2511(a)(1) and (b).

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/20/2018